1

2

3

4                        UNITED STATES DISTRICT COURT

5                              DISTRICT OF NEVADA

6                                    * * *

7   NEVADA POWER COMPANY,                )
                                         )
8                        Plaintiff,      )        CV-S-04-1526-PMP (PAL)
                                         )
9   v.                                   )
                                         )        **ORDER**
10  CALPINE CORPORATION, a Delaware      )
    Corporation; MOAPA ENERGY            )
11  CENTER, LLC; FIREMAN'S FUND          )
    INSURANCE COMPANY, a California      )
12  Corporation; and DOES I-X, Inclusive,)
                                         )
13                       Defendants.     )
    _____)

14

15          Presently before this Court is Fireman's Fund Insurance Company's Motion to

16  Dismiss Nevada Power Company's Amendment to Complaint (Doc. #62) filed on February

17  10, 2006.  Defendant Fireman's Fund Insurance Company ("Fireman's") also files Request

18  for Judicial Notice in Support of Fireman's Fund Insurance Company's Motion to Dismiss

19  Amended Complaint (Doc. #63) on February 10, 2006.  Plaintiff filed an Opposition (Doc.

20  #65) as well as the Affidavit of William E. Peterson in Support of Nevada Power

21  Company's Opposition to Motion to Dismiss and Need for Response (Doc. #66) on

22  February 27, 2006.  Defendant Fireman's filed a Reply (Doc. #69) as well as a Declaration

23  of Karen I. Shanbrom in Support of Fireman's Fund Insurance Company's Reply Brief in

24  Support of its Motion to Dismiss Amended Complaint (Doc. #70) on March 13, 2006.

25  ///

26  ///

I.        **BACKGROUND**

This case arises out of a series of agreements between Plaintiff Nevada Power Company ("NPC") and Defendants surrounding a project known as the Centennial Project ("the Project") in Las Vegas, Nevada.  (Am. Compl., Ex. 1 at 2.)  A purpose of the Project "is to provide electric transmission capacity to enable electric power generated by new power plants currently being constructed or to be constructed to be transmitted from these plants to electric markets in Nevada and in the Western United States."  (Id.)  Plaintiff alleges that an electricity generating plant to be constructed by Defendant Moapa Energy Center, LLC ("Moapa") is among the plants for which the line is being constructed.  (Id.)  Moapa is a wholly owned subsidiary of Defendant Calpine Corporation ("Calpine").  Plaintiff alleges that Moapa is an instrumentality and agent of Calpine, which at times served as Calpine's alter ego.  (Id. at 2-3.)

As a condition to building the Project, NPC required the new generators for which the line was being constructed, including Defendants, to enter into a Transmission Service Agreement ("TSA") which would serve as a promise that the new generators will use the line for an extended period of time, and that they will pay NPC for the use of that line over an extended period of time.  (Id. at 3.)  The TSAs are described by Plaintiff as "take or pay contracts," which means that the generators must pay for the service regardless of actual use.  (Id.)  A condition to the TSAs is that generators are required to post security to guarantee their obligations under the contract.  (Id.)  NPC's transmission of electric power is administered pursuant to the Open Access Transmission Tarriff ("OATT").  The OATT is incorporated into the TSA.

///

///

///

///

The OATT provides:

> For the purpose of determining the ability of the Transmission
> Customer to meet its obligations related to the service hereunder, the
> Transmission Provider may require reasonable credit review
> procedures.  This review shall be made in accordance with the standard
> commercial practices.  In addition, the Transmission Provider may
> require the Transmission customer to provide and maintain in effect
> during the term of the Service Agreement, an unconditional and
> irrevocable letter of credit as security to meet its responsibilities and
> obligations under the Tariff, or an alternative form of security
> proposed by the Transmission Customer and acceptable to the
> Transmission Provider and consistent with commercial practices
> established by the Uniform Commercial Code that protects the
> Transmission Provider against the risk of non-payment.

(Am. Compl., Ex. 5.)

As a consequence of disputes between Plaintiff and Defendants, they entered into a global settlement agreement by which they agreed that Calpine's 500 Megawatt TSA would be terminated, and that Calpine would continue to post a surety bond issued by Defendant Fireman's as surety in favor of NPC as obligee in the amount of $33,000,000. (Id. at 4.)  A 400 MW TSA continued to be honored by both parties.  (Id.)  Under the terms of the settlement agreement, once service on the 400 MW TSA commenced, NPC would agree to reduce annually the amount of the security required in an amount equal to the revenues received by NPC, and to release the security altogether on expiration of the twenty-five (25) year term of the 400 MW TSA.  (Id.)

Fireman's is a California corporation, with its principal place of business in California. (Id. at 2.)  Plaintiff alleges that Fireman's holds and maintains a license to write and issue insurance policies in Nevada, through its Nevada agent, who is incorporated and licensed to do business under Nevada law.  (Id.)  Calpine obtained an indemnity bond from Fireman's in the amount of $33,333,333.00.  (Am. Compl. Ex. 1 at Ex. C.)  The bond was to become effective July 16, 2001 and was to remain in full force and effect until May 1, 2004, "at which time it terminates notwithstanding provisions to the contrary in the [Settlement] Agreement."  (Id.)  The bond states:

3

1
2
3
4
5
6
7
8

WHEREAS, the Principal has requested and the Obligee has agreed to provide transmission services to the Principal in accordance with the unexecuted Service Agreement dated on or about July 16, 2001 for the Long-Term Firm Point-to-Point Transmission Services for 400 MW of service from Crystal 500 kV Substation to Mead 230kV Substation in Nevada Power's Control Area (a form which is attached hereto as Exhibit A), subject to the requirements of the Obligee's Open Access Transmission Tariff and any modifications required under applicable orders of the Federal Energy Regulatory Commission accepting such Service Agreement for Long Term Firm Point-to-Point Transmission, and which Service Agreement (subject to such requirements and as so modified are by reference made a part hereof and hereinafter referred to as the "Agreement," and in relation to which Agreement, all terms and definitions contained herein, shall carry the same meaning as established in the Agreement.

9  (Id.)  The bond further states that with regard to the termination of the bond, "the condition

10  of the obligation is such that if the Principal abide by all terms and conditions of the

11  Agreement rendered to the Obligee, within the time required under the Agreement, then

12  [the] obligation shall be null and void, otherwise to remain in full force and effect."  (Id.)

13  Under the terms of the bond, if Moapa or Calpine were declared in default of the

14  Agreement, NPC was to provide written notice to Fireman's within sixty days.  (Id.)  The

15  bond provided that, "[t]his bond shall be governed by and interpreted in accordance with

16  the laws of the State of California, without regard to principles of conflict of law."  (Id.)

17       Plaintiff alleges that in September 2003, Calpine informed NPC, in writing, that

18  the 400 MW TSA should be terminated and the bond supporting it should be released

19  together with any claims NPC had or has against Calpine and Fireman's.  (Id.)  Plaintiff

20  further alleges that in October 2003, Calpine informed the Public Utilities Commission of

21  Nevada that if negotiation with NPC was not successful, then Calpine would terminate the

22  400 MW TSA.  (Id.)

23       On April 5, 2004, Plaintiff alleges that it informed Calpine and Fireman's, as

24  Calpine's surety, that the security bond was due to expire and that a replacement or

25  extension bond would be required or NPC would consider Calpine in default of the TSA

26  and the Settlement Agreement.  (Id.)  Plaintiff alleges that "at that time, Calpine had already

1    manifested its intent to terminate and repudiate the 400 MW TSA which essentially

2    repudiated Calpine's promises under the contracts." (Id.)  Plaintiff further alleges that it

3    requested in writing a replacement or extension on the security on April 20, 2004 and that

4    neither Calpine nor Fireman's responded to the request.  (Id.)

5           On April 23, 2004, Calpine allegedly faxed NPC a letter noting that the bond

6    would expire, and that no draw on the bond legally could be made.  (Id.)  Plaintiff alleges

7    the fax was silent as to Calpine's intentions.  (Id.)  Plaintiff again alleges that, "Calpine and

8    Fireman's both knew that Calpine had repudiated its obligations under the contracts and its

9    obligations to extend or replace the surety." (Id. at 6.)  On April 27, 2004, NPC allegedly

10   provided Calpine with another demand.  (Id.)  On April 29, 2004, Plaintiff alleges

11   Fireman's informed it that no default would occur until the bond expired, and at that time

12   Fireman's would not be liable under the bond.  (Id. at 7.)  In the same letter, Fireman's

13   allegedly asserted that NPC had not yet performed its obligations under the Settlement

14   Agreement, and therefore NPC was not entitled to recourse from the bond.  (Id.)

15           On March 15, 2004, NPC filed a petition with the Federal Energy Regulatory

16   Commission ("FERC") seeking a declaratory order with regard to the contractual

17   obligations between NPC and Calpine.  On November 19, 2004, FERC issued an order

18   granting in part and denying in part NPC's petition.  FERC held that neither Calpine nor

19   NPC could terminate unilaterally their TSA, however it was premature and speculative to

20   rule on the matter of damages arising from a possible breach of the TSA.

21           Plaintiff initially filed suit in Nevada state district court alleging breach of

22   contract and breach of the covenant of good faith and fair dealing.  (Compl. [Doc. #1, Ex.

23   1].)   Additionally, Plaintiff sought specific performance of the contract against Calpine

24   and Fireman's, as well as declaratory relief.  Plaintiff attached to the Complaint the

25   Settlement Agreement, the 400 MW TSA between NPC and Calpine, and the indemnity

26   bond.  (Compl.)  Defendants removed this action to this Court on November 4, 2004,

1   pursuant to 28 U.S.C. § 1332, asserting this Court has diversity jurisdiction.  (Pet. for

2   Removal of Action to United States Dist. Ct. for the Dist. of Nev. at 2.)

3          On December 10, 2004, Fireman's moved this Court to dismiss Plaintiff's initial

4   Complaint under Federal Rule of Civil Procedure 12(b)(6).  (Mot. to Dismiss [Doc. #16].)

5   The Court granted Fireman's motion on May 25, 2005, holding that Plaintiff had failed to

6   state a claim upon which relief may be granted.  (Order dated May 25, 2005 [Doc. #28].)  In

7   particular, the Court held that California law governed the bond because of the bond's

8   choice-of-law provision naming California law as controlling.  (Id. at 10.)

9          On June 14, 2005, Plaintiff filed an Amendment to the Complaint as to

10  Defendant Fireman's[Doc. #31] in this Court in which Plaintiff alleges Defendants

11  breached the contract under the UCC and common law (claim 1) and breached their

12  contractual duty and covenant of good faith and fair dealing (claim 2).  Plaintiff seeks

13  specific performance (claim 3) and judgment for the full amount due under the bond (claim

14  4).

15         Fireman's now moves the Court to dismiss Plaintiff's Amended Complaint for

16  failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) with regard to

17  Plaintiff's claims against Fireman's.  First, Fireman's argues that the bond's express

18  contractual termination clause precludes NPC's claim on the bond.  Specifically, Fireman's

19  argues that it is responsible for any breach that occured during the bond period, therefore

20  because Calpine breached it's agreement to post security after the bond's expiration,

21  Fireman's is not liable to NPC.  Fireman's argues that nowhere in the governing documents

22  is it liable for Calpine's breach in failing to maintain or replace the security.  Furthermore,

23  Fireman's argues that NPC did not allege adequately anticipatory repudiation, and therefore

24  cannot state a claim as a matter of law.  Specifically, Fireman's argues that the Uniform

25  Commercial Code ("UCC") does not govern either the TSA or the bond.  Finally, Fireman's

26  argus that NPC cannot sustain a claim for breach of the covenant of good faith and fair

1   dealing because there is no such cause of action under California law.

2         Plaintiff responds that it sufficiently has stated a claim for breach of contract.

3   First, Plaintiff argues that the UCC, incorporated through the OATT into the bond, governs

4   the contract, and therefore under the UCC Calpine committed anticipatory breach for which

5   Fireman's is liable.  Plaintiff alleges that Calpine was clear in its intent to breach the

6   contract, and that Fireman's was aware of Calpine's intent to breach.  Plaintiff asserts that

7   because Fireman's guaranteed and bonded Calpine's promises for the full term of its

8   bonded guarantee, Fireman's is liable to Plaintiff for the full amount of the bond.

9   Additionally, Plaintiff argues that the Court should evaluate this motion as a motion for

10  summary judgment, and that the Court should allow further discovery pursuant to Federal

11  Rule of Civil Procedure 56(f).

12  **II.        STANDARD OF REVIEW**

13        Summary judgment is appropriate if "the pleadings, depositions, answers to

14  interrogatories, and admissions on file, together with the affidavits, if any" demonstrate

15  "there is no genuine issue as to any material fact and . . . the moving party is entitled to a

16  judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law defines which

17  facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All

18  justifiable inferences must be viewed in the light most favorable to the non-moving party.

19  County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

20        The party moving for summary judgment bears the initial burden of showing the

21  absence of a genuine issue of material fact.  Fairbank v. Wunderman Cato Johnson, 212

22  F.3d 528, 531 (9th Cir. 2000).  The burden then shifts to the non-moving party to go beyond

23  the pleadings and set forth specific facts demonstrating there is a genuine issue for trial.

24  Id.; Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001).

25        Rule 12(b) provides that, "[i]f on a motion asserting the defense numbered (6) to

26  dismiss for failure of the pleading to state a claim upon which relief can be granted, matters

1    outside the pleading are presented to and not excluded by the court, the motion shall be

2    treated as one for summary judgment and disposed of as provided in Rule 56, and all parties

3    shall be given reasonable opportunity to present all material made pertinent to such a

4    motion by Rule 56." Fed. R. Civ. P. 12(b). However, "a motion to dismiss is not

5    automatically converted into a motion for summary judgment whenever matters outside the

6    pleading happen to be filed with the court and not expressly rejected by the court." North

7    Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 580 (9th Cir. 1983). Where a Court makes

8    a determination pursuant to Rule 12(b)(6), it is "precluded from relying on matters outside

9    the four corners of the [Plaintiff's] Complaint." United States v. LSL Biotechnologies, 379

10   F.3d 672, 700 (9th Cir. 2004).

11          Plaintiff argues that Fireman's relies on matters outside of the pleadings in the

12   motion to dismiss, and therefore the Court should treat Fireman's motion as one for

13   summary judgment. (Opp'n at 29.) Fireman's argues that all of the evidence it introduced

14   either was appended to the Amended Complaint, referenced in the Amended Complaint, or

15   subject to judicial notice, and therefore none constituted matters outside of the pleadings.

16   Fireman's thus contends that its motion should be preserved as a motion to dismiss for

17   failure to state a claim pursuant to Rule 12(b).

18          Plaintiff attached to the original Complaint the Settlement Agreement as Exhibit

19   A, and a copy of the 400 MW TSA with Calpine as Exhibit B. Furthermore, Plaintiff states

20   that, "[t]hese two agreements together with the documents incorporated in or by them are

21   referred to as 'the contracts,'" which form the basis of Plaintiff's Amended Complaint.

22   (Am. Compl., Ex. 1 at 4, Ex. 1. at Ex. A, Ex. B.) Additionally, Plaintiff attached the OATT

23   and the bond. (Am. Compl., Ex. 1.) Fireman's relies on these documents to argue that

24   Plaintiff has failed to state a claim upon which relief may be granted for breach of contract

25   and breach of the covenant of good faith and fair dealing. Fireman's does not request the

26   Court to evaluate matters outside the pleadings in determining the outcome of Fireman's

1  motion, therefore the Court will treat the motion as a motion to dismiss made pursuant to

2  Rule 12(b)(6), not as a motion for summary judgment made pursuant to Rule 56.  Thus, the

3  Court will consider only those allegations alleged in the Amended Complaint, and those

4  documents incorporated into the Amended Complaint.

5  **III.    Choice of Law**

6          "In a diversity action, the federal district court must apply the choice of law rules

7  prevailing in the state where the court is located."  Alaska Airlines, Inc. v. United Airlines,

8  Inc., 902 F.2d 1400, 1401 (9th Cir. 1990).  Thus, the Court is bound to apply Nevada's

9  choice of law rules in determining whether Nevada or California law applies in this case.

10  See id.  In Nevada, "[i]t is well settled that the expressed intention of the parties as to the

11  applicable law in the construction of a contract is controlling if the parties acted in good

12  faith and not to evade the law of the real situs of the contract."  Sievers v. Diversified

13  Mortgage Investors, 602 P.2d 270, 273 (Nev. 1979) (citing Seeman v. Philadelphia

14  Warehouse Co., 274 U.S. 403, 407 (1927)).  In Sievers, the Nevada Supreme Court

15  established two prerequisites before deferring to a choice-of-law provision in a contract

16  –that "[t]he situs fixed by the agreement . . . have a substantial relation with the

17  transaction," and "the agreement must not be contrary to the public policy of the forum."

18  Id.

19          As this Court previously has held, the indemity bond's plain language makes

20  clear that it was the parties' intention at the time they signed the contract to choose

21  California law as the law governing the contract, therefore this Court will apply California

22  law. (Order dated May 25, 2005.)  There is no indication that the parties did not act in good

23  faith or intended to evade the law of the contract's real situs.  Fireman's is incorporated in

24  California, with its principal place of business in California, therefore California has a

25  substantial relation with the transaction.  That Fireman's operates through an agent in

26  Nevada does not affect this Court's analysis, as the test is not which state has a more

1   significant relationship to the transaction, but whether the chosen applicable law has a

2   substantial relation to the transaction.

3          Similarly, there is no indication that applying California law would be contrary to

4   Nevada public policy.  The Nevada Insurance Code provides:

5

6          "Insurer" includes every person engaged as principal and as
           indemnitor, surety or contractor in the business of entering into
           contracts of insurances.

7

8   Nev. Rev. Stat. 679A.100.  The Nevada Insurance Code prohibits any transaction involving

    insurance to occur in Nevada, without a Nevada license:

9

10         No person shall transact a business of insurance in Nevada, or relative
           to a subject of insurance resident, located or to be performed in Nevada
           or elsewhere, without complying with the applicable provisions of this

11         code.

12  Nev. Rev. Stat. 679A.150.

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

The Nevada State legislature included in the code the purpose of the code:

> 1. The purposes of this code are to:
> (a)  Protect policyholders and all having an interest under insurance polices;
> (b)  Implement the public interest in the business of insurance;
> (c) Provide adequate standards of solidity of insurers, and of integrity and competence in conduct of their affairs in the home offices and in the field;
> (d)  Improve and thereby preserve state regulation of insurance;
> (e)  Insure that policyholders, claimants and insurers are treated fairly and equitably;
> (f)  Encourage full cooperation of the office of the commissioner with other regulatory bodies, both of this and other states and of the Federal Government;
> (g) Insure that the state has an adequate and healthy insurance market characterized by competitive conditions and the exercise of initiative;
> (h)  Prevent misleading, unfair and monopolistic practices in insurance operations; and
> (i) Continue to provide the State of Nevada with a comprehensive, modern and adequate body of law, in response to the McCarren Act, for the effective regulation and supervision of insurance business transacted within, or affecting interests of the people of this state.

Nev. Rev. Stat.  679A.140.  The purpose of Nevada's insurance laws is not to preclude choice-of-law provisions in surety contracts, but to ensure that insurance contracts serving Nevada's citizenry abide by the state's regulations.  There is no indication, or argument, that the indemnity bond was issued in a manner contrary to the Nevada insurance code, or its provisions therein, therefore this Court will honor the parties' intentions and apply California law to the present transaction.

///

///

///

///

///

1    **IV.      DISCUSSION**

2           **A.      Breach of Contract (claim 1)**

3           Fireman's moves this Court to dismiss Plaintiff's claim for breach of contract for

4    failure to state a claim.  Fireman's argues that the bond's express contractual termination

5    clause precludes NPC's claim on the bond.  Fireman's argues that Calpine's alleged breach

6    was the failure to renew or replace the surety bond and therefore the breach occurred upon

7    the expiration of Fireman's bond and its liability to Plaintiff.  Fireman's further argues that

8    nowhere in the bond, or the underlying agreements, including the TSA, the OATT, or the

9    Settlement Agreement, is there language suggesting Fireman's could be liable for Calpine's

10   breach in failing to maintain or replace the security.  Alternatively, Fireman's argues that

11   Plaintiff has not alleged adequately a claim for anticipatory repudiation.  Specifically,

12   Fireman's argues that the UCC does not govern either the TSA or the Bond, and therefore

13   does not set the standard for anticipatory repudiation.

14          Plaintiff responds that Calpine breached through an anticipatory repudiation of

15   the contract and therefore the breach occurred while the bond was valid and enforceable.

16   Furthermore, Plaintiff argues that the bond incorporated the UCC, as contained in the

17   OATT, and therefore the UCC governs the standard for anticipatory repudiation.  Plaintiff

18   concludes that under this standard, Plaintiff sufficiently has stated a claim for breach of

19   contract.  Alternatively, Plaintiff argues that Calpine's actions constituted anticipatory

20   breach prior to the May 1, 2004 expiration of the bond, therefore Fireman's is responsible

21   for the breach of contract.  Fireman's responds that the UCC does not apply to the TSA or

22   the bond.  Rather, Fireman's argues that the OATT requires only that the chosen security

23   conforms with the commercial practices established by the UCC.

24          The UCC does not govern the TSA, and therefore does not govern Calpine's

25   performance with regard to its contract with NPC.  The OATT requires the Transmission

26   Customer, Calpine, to secure either "an unconditionally and irrevocable letter of credit as

1   security," or "an alternative form of security proposed by the Transmission Customer and

2   acceptable to the Transmission Provided and consistent with commercial practices

3   established by the Uniform Commercial Code that protects the Transmission Provider

4   against the risk of non-payment."  (Am. Compl., Ex. 5.)  Thus, the form of security NPC

5   requires must be consistent with the UCC.  This requirement alone does not expand the

6   scope of the UCC's applicability to the Agreement at large, and therefore California law

7   applies to the present matter, as set forth in the choice of law clause.

8         In California, "[i]f the performance of an obligation [should] be prevented by one

9   party thereto, the other party is entitled to all the benefits which he would have obtained had

10  it been performed by both parties."  Oakland Cal. Towel Co. v. Sivils, 126 P.2d 651, 652

11  (Cal. 1942) (citing Cal. Civ. Code § 3300).  In that situation, "the measure of damages is the

12  amount which will compensate the party aggrieved for the detriment proximately caused by

13  the breach."  Id.  California Civil Code § 1550 defines the essential elements of a contract

14  as: "(1) Parties capable of contracting; (2) Their consent; (3) A lawful object; and, (4) A

15  sufficient cause or consideration."  Cal. Civ. Code § 1550.  In evaluating the validity of

16  contracts, California courts apply the elements articulated in § 1550.  See O'Byrne v. Santa

17  Monica UCLA Med. Ctr., 111 Cal. Rptr. 2d 575, 582 (Cal. Ct. App. 2001).

18        California recognizes an action for anticipatory breach and "that a definite and

19  unconditional repudiation of the contract by the promisor communicated to the promisee,

20  being a breach of the contract, creates an immediate right of action even though it takes

21  place long before the time prescribed for the promised performance and before conditions

22  specified in the contract ever occurred."  Daum v. Super. Ct., Sutter County, 39 Cal. Rptr.

23  443, 446 (Cal. App. 1964).

24  ///

25  ///

26  ///

13

The California Supreme Court has held:

> Strictly speaking, a total breach of a contract may arise in two ways, which although different, have been frequently confused with each other. One is an anticipatory breach, or as it may be termed, a breach of anticipatory repudiation, which is necessarily total and which is of importance both with relation to an excuse for nonperformance by the promisee to recover damages immediately for a total breach of the contract before performance by the promisor is due thereunder. By its very name an essential element of a true anticipatory breach of a contract is that the repudiation by the promisor occur before his performance is due under the contract. . . . A contract is totally breached and an anticipatory repudiation occurs when the promisor without justification and before he has committed a breach, makes a positive statement to the promisee indicating that he will not or cannot substantially perform his contractual duties.

Gold Mining & Water Co. v. Swinerton, 142 P.2d 22, 27 (Cal. 1943). "The repudiation may be express or implied. An express repudiation is a clear, positive, unequivocal refusal to perform, an implied repudiation results from conduct where the promisor puts it out of his power to perform so as to make substantial performance of his promise impossible." Taylor v. Johnson, 123 Cal. Rptr 641, 645 (Cal. 1975) (internal citations omitted).

Taking all allegations as true, Plaintiff has stated sufficiently a claim for breach of contract. The Amended Complaint alleges that in April 2004, Calpine informed Plaintiff that it would not provide future consideration, or perform its obligations under the TSA. (Am. Compl. at 6.) Plaintiff further alleges that Calpine informed it that "under no circumstances would Calpine perform the contract unless NPC agreed to provide Calpine with additional consideration in the form of purchasing electricity from Calpine." (Am. Compl.) Both allegations sufficiently state a claim for anticipatory breach, and thus breach of contract. The Court will deny Defendant Fireman's motion to dismiss with regard to Plaintiff's breach of contract claim (claim 1).

///

///

///

14

**B.     Breach of the Covenant of Good Faith and Fair Dealing (claim 2)**

Fireman's moves the Court to dismiss Plaintiff's claim for breach of the covenant of good faith and fair dealing.  Fireman's argues that California does not recognize a tort of breach of the covenant of good faith and fair dealing for sureties, and therefore Plaintiff does not state a claim as a matter of law.  Plaintiff concedes that its claim is not valid as a tort.  Rather, Plaintiff argues that the Amended Complaint states a claim for a breach of a contractual covenant, as opposed to a common law tort, which is permitted under California and Nevada law, and therefore Plaintiff has stated a valid claim.

In California, "[i]t is well established that a covenant of good faith and fair dealing is implicit in every contract, and that the essence of the implied covenant is that neither party to a contract will do anything to injure the right of the other to receive the benefits of the contract."  Cates Constr., Inc. v. Talbot Partners, 86 Cal. Rptr. 2d 855, 864 (Cal. 1999).  "Initially, the concept of a duty of good faith developed in contract law as 'a kind of 'safety valve' to which judges may turn to fill gaps and qualify or limit rights and duties otherwise arising under rules of law and specific contract language.'"  Foley v. Interactive Data Corp., 765 P.2d 373, 389 (Cal. 1988) (citing Robert S. Summers, The General Duty of Good Faith - Its Recognition and Conceptualization, 67 Cornell L. Rev. 810, 812 (1982)).

Good Faith is "'honesty in fact in the conduct or transaction concerned.'"  RESTATEMENT (SECOND) OF CONTRACTS § 205 (citing U.C.C. § 1-201(19)).  "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness."  Id.  That which constitutes bad faith includes: "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and

15

1    interference with or failure to cooperate in the other party's performance." Id.  In

2    California, the scope of the covenant is limited by the nature and extent of the duty of the

3    contractual purpose.  Id.  As a contract concept, breach of duty leads to the imposition of

4    contract damages determined by the nature of the breach and contract principles.

5          As a tort, the California Supreme Court has held that the common law tort of

6    breach of good faith and fair dealing is not available to surety bonds.  Cates Constr., Inc. v.

7    Talbot Partners, 86 Cal. Rptr. 2d 855, 871 (Cal. 1999).  "Although suretyship is listed in the

8    Insurance Code as a class of insurance, it does not follow that a surety bond equates to a

9    policy of insurance under the common law or common law theories of liability."  Id.

10   Furthermore, the policy considerations justifying the common law tort of breach of good

11   faith and fair dealing are not present in the context of suretyships.  "Because the nature and

12   extent of a surety's obligations under a performance bond are determined with reference to

13   such terms and conditions [as the incorporation of the underlying contract], bonds do not

14   reflect the adhesion and unequal bargaining power that are inherent in insurance policies."

15   Id. at 872.  "[R]ecovery for a surety's breach of the implied covenant of good faith and fair

16   dealing is properly limited to those damages within the contemplation of the parties at the

17   time the performance bond is given or at least reasonably foreseeable by them at that time."

18   Id.

19          Taking all allegations as true, Plaintiff has sufficiently stated a claim for breach

20   of the contractual covenant of good faith and fair dealing based on contract, but not tort,

21   principles.  As stated previously, Plaintiff alleges that Calpine informed it that "under no

22   circumstances would Calpine perform the contract unless  NPC agreed to provide Calpine

23   with additional consideration in the form of purchasing electricity from Calpine."  (Am.

24   Compl. at 6.)  Furthermore, it is unclear whether Fireman's was aware of the alleged

25   breach, and whether Fireman's chose not to perform despite the breach.  Therefore, the

26   Court will deny Fireman's motion to dismiss.  However, should Plaintiff succeed in its

1   claim for breach of the implied covenant of good faith and fair dealing, Plaintiff's damages

2   are limited to those contemplated in the bond, or contract itself, as well as those remedies

3   based in contract law, including enforcement of the contract.

4   **V.        CONCLUSION**

5        IT IS THEREFORE ORDERED that Fireman's Fund Insurance Company's

6   Motion to Dismiss Nevada Power Company's Amendment to Complaint (Doc. #62) is

7   hereby DENIED.

8        IT IS FURTHER ORDERED that Fireman's Fund Insurance Company's Motion

9   to Strike Nevada Power Company's Extrinsic Evidence Offered in Support of its

10   Opposition to Motion to Dismiss (Doc. #68) is also DENIED.

11

12   DATE: June 1, 2006

13

14                              _____

15                              PHILIP M. PRO

                              Chief United States District Judge

16

17

18

19

20

21

22

23

24

25

26